**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 16-cv-01094-CMA-KMT

WESTIN SANDBERG,

      Plaintiff,

v.

ENGLEWOOD, COLORADO, a municipality,
DUGAN COMER, individual and in his official capacity as Englewood City Attorney,
TOM SCHNEIDER, individually and in his official capacity,
CHRISTIAN CONTOS, individually and in his official capacity,
JAMES JOHMSON, individually and in his official capacity,
ROBERT FIEGER, individually and in his official capacity,
STEPHEN SIEGAL, individually and in his official capacity,

      Defendants.

---

**ORDER ADOPTING IN PART AND REJECTING IN PART THE RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

---

      This matter is before the Court on the Recommendation of United States

Magistrate Judge Kathleen M. Tafoya (Doc. # 35), dated January 31, 2017, in which

Magistrate Judge Tafoya recommends that this Court grant in part and deny in part

Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) (Doc. # 18).  The Recommendation is incorporated herein by

reference.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## I.     STANDARD OF REVIEW

The parties have filed Objections to the Recommendation, essentially

challenging the Recommendation in its entirety.  Federal Rule of Civil Procedure

72(b)(3) thus requires that this Court conduct a de novo review of the issues.  In so

doing, the Court "may accept, reject, or modify the recommended disposition; receive

further evidence; or return the matter to the magistrate judge with instructions."  *Id.*  Any

arguments raised for the first time in objections are deemed waivable and need not be

considered by this Court.  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

## II.     STANDARDS GOVERNING A RULE 12(b)(6) MOTION TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for failure to

state a claim if it appears beyond a doubt that the plaintiff can plead no set of facts in

support of his claim that would entitle him to relief.  *Golan v. Ashcroft*, 310 F. Supp. 2d

1215, 1217 (D. Colo. 2004).  Dismissal under Rule 12(b)(6) may also be based on the

lack of a cognizable legal theory.  *Id.*  In reviewing a motion to dismiss, courts take all

well-pleaded allegations in the plaintiff's complaint as true and construe the allegations

in the light most favorable to plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).  However, a

litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110

(10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not

been alleged, or that a defendant has violated laws in ways that a plaintiff has not

contended.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

*Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint").

### III.   <u>**FACTUAL BACKGROUND**</u>

The following factual allegations are taken from Plaintiff's Complaint.  The Court takes them as true for the purposes of ruling on Defendants' Rule 12(b)(6) Motion.

On May 14, 2014, Plaintiff went to Epic Autos to get his vehicle serviced. (Doc. # 1 at 4.)  At that time, Plaintiff was wearing a Ruger 9mm pistol in a holster on his hip. (*Id.*)  The owner of Epic Autos inquired about Plaintiff's pistol, but ultimately allowed him to remain on the premises "as long as he refrained from handling his firearm" while there.  (*Id.*)  While waiting for his vehicle, Plaintiff left Epic Autos and walked to a nearby convenience store.  (*Id.* at 5.)  A neighboring business owner saw Plaintiff and called 911, reporting concerns that Plaintiff was involved in workplace violence.  (*Id.*)  Shortly after Plaintiff's return to Epic Autos, Englewood police officers, Defendants James Johnson and Robert Fieger, responded to the call, entered Epic Autos, drew their weapons, and searched and detained Plaintiff.  (*Id.*)  Plaintiff did not consent to the search.  (*Id.*)  Defendants Johnson and Fieger seized Plaintiff's pistol, holster, magazine pouch, two magazines, and twenty-one rounds of ammunition. (*Id.*)  Plaintiff requested to videotape the search, detention, and seizure of his property; the two officers refused. (*Id.* at 6.)

Following the search, Defendant Johnson contacted the 911 caller who reported that he saw Plaintiff carrying a firearm on his hip and immediately thought he was

engaged in workplace violence.  (*Id.*)  At some point, two more officers with the

Englewood Police Department, Defendants Stephen Siegal and Christian Contos,

joined Defendants Johnson and Fieger at the scene.  (*Id.*)  Defendant Contos spoke

with the manager of Epic Autos, who informed him that he had asked Plaintiff not to

handle his gun while in the repair shop, Plaintiff had complied, and Plaintiff had been

coming and going from the premises while waiting for his vehicle.  (*Id.* at 6–7.)  After

checking the serial number and verifying Plaintiff's pistol was not stolen, Defendant

Contos left.  (*Id.* at 7.)

Subsequently, Defendant Johnson contacted Englewood City Attorney

Defendant Dugan Comer for advice on what charges could be filed against Plaintiff.  (*Id.*

at 7.)  Defendant Comer informed Officer Johnson that a charge for disorderly conduct

would be applicable if anyone was alarmed by Plaintiff.  (*Id.*)  Defendant Johnson also

contacted Defendant Tom Schneider, Sergeant for the Englewood Police Department,

who informed Officer Johnson that a charge for disorderly conduct was applicable to the

situation.  (*Id.*)  Officer Johnson issued Plaintiff a summons for disorderly conduct and

booked the items listed above into evidence.  (*Id.*)  Plaintiff was detained at Epic Autos

for about four hours total.  (*Id.*)

On September 11, 2014, the Arapahoe County District Attorney dropped the

charge against Plaintiff.  (*Id.* at 8.)  The Englewood Police Department returned

Plaintiff's property on October 20, 2014.  (*Id.*)

## IV.    PLAINTIFF'S CLAIMS

Based on this incident, Plaintiff asserts six claims for relief.  He brings claims under 42 U.S.C. § 1983, alleging that Defendants violated his Second and Fourth Amendment rights, as well as a conspiracy claim against the individual officer Defendants.  (*Id.* at 8–11.)  Plaintiff also brings claims against Defendants Johnson and Fieger under the First Amendment and against Defendants City of Englewood, Schneider, and Comer for failure to properly train or supervise Defendants Johnson, Fieger, Siegal, and Contos.  (*Id.* at 11–14.)  Finally, Plaintiff asserts a claim under the Colorado Constitution, Art. II, Sec. 13, related to his right to keep and bear arms.

## V.   <u>ANALYSIS</u>

### A.  Claims under 42 U.S.C. § 1983

Section 1983 imposes liability for conduct carried out under the color of state law that deprives a plaintiff of "rights, privileges, or immunities secured by the Constitution and laws. . . ."  42 U.S.C. § 1983.  To succeed on a §1983 claim, a plaintiff must demonstrate that the defendants (1) caused or contributed to the deprivation of plaintiff's rights, and (2) did so under the color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

Moreover, as pertinent here, public officials may be entitled to qualified immunity from § 1983 claims.  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *Butz v. Economou*, 438 U.S. 478, 508 (1978).  In resolving qualified immunity cases, courts consider (1) whether the plaintiff has alleged a deprivation of an actual constitutional right, and (2) whether that right was clearly established at the time of the alleged violation.  *Peterson v. Jenson*, 371 F.3d 1199, 1202 (10th Cir. 2004).  In other words, government officials

are not subject to damages liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S., at 818; *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006) (quoting *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992)). This generality does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Rather, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*; *Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012). Yet, the law must be clearly established "with regard to the specific context of the case presented." *Thomas v. Durastanti*, 607 F.3d 655, 669–70 (10th Cir. 2010).

**1. Second Amendment Claim**

There is "no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *D.C. v. Heller*, 554 U.S. 570, 595 (2008). That right, however, is not unlimited. *Id.* In *Heller*, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear a lawful firearm "in the home operable for the purpose of immediate self-defense." *Id.* at 636. In *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010), the Supreme Court

extended that holding as applicable to the states under the Fourteenth Amendment. However, the Court cautioned:

> It is important to keep in mind that *Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."

*Id.* at 786; *see Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015) ("[W]e are bound by Supreme Court dicta almost as firmly as by the Courts' outright holdings, particularly when the dicta is recent and not enfeebled by later statements.") (internal quotations omitted).

Plaintiff has not submitted any case law from the Supreme Court, the Tenth Circuit, or elsewhere demonstrating that an individual has a vested Second Amendment right to openly carry a firearm in public or on someone else's property.  Although cases in this Circuit have addressed other scenarios, *see Bonidy*, 790 F.3d at 1125 ("[T]the Second Amendment right to carry firearms does not apply to federal buildings, such as post offices."); *Peterson v. Martinez*, 707 F.3d 1197, 1209 (10th Cir. 2013) (no Second Amendment right for members of the public to carry concealed firearms in public), this Court is not aware of any Tenth Circuit precedent extending the holding in *Heller* to an individual's right to bear arms in public.  Indeed, the issue is largely unsettled among courts across the country. *See Powell v. Tompkins*, 783 F.3d 332, 348 (1st Cir. 2015) ("[T]o date [the Supreme Court] has not said, that publicly carrying a firearm unconnected to defense of hearth and home and unconnected to militia service is a definitive right of private citizens protected under the Second Amendment. Debate

continues among courts."); *Drake v. Filko,* 724 F.3d 426, 430 (3d Cir. 2013) ("It remains

unsettled whether the individual right to bear arms for the purpose of self-defense

extends beyond the home."); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir.

2010) ("[C]ertainly, to some degree, [the Second Amendment] must protect the right of

law-abiding citizens to possess firearms for other, as-yet-undefined, lawful purposes.");

*United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) ("There may or may

not be a Second Amendment right in some places beyond the home, but we have no

idea what those places are, what the criteria for selecting them should be, what sliding

scales of scrutiny might apply to them, or any one of a number of other questions.");

*Peruta v. Cty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) ("There may or may not

be a Second Amendment right for a member of the general public to carry a firearm

openly in public. The Supreme Court has not answered that question, and we do not

answer it here.").  Some courts have declined to decide the issue, merely assuming for

analytical purposes that the right recognized in *Heller* extends beyond the home.  *See*

*Drake*, 724 F.3d at 430–31; *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013);

*Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012); *Hightower v. City of*

*Boston*, 693 F.3d 61, 72 n. 8, 74 (1st Cir. 2012).

Moreover, courts that have reached a determination on the issue are divided on

the outcome.  *Compare Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir. 2012)

(recognizing that the "right to keep and bear arms for personal self-defense ... implies a

right to carry a loaded gun outside the home"); and *Palmer v. Dist. of Columbia*, 59

F.Supp.3d 173, 181–82 (D.D.C. 2014) (holding that Second Amendment right

recognized in *Heller* extends beyond home), with *Young v. Hawaii*, 911 F.Supp.2d 972, 990 (D. Haw. 2012) ("[L]imitations on carrying weapons in public do[ ] not implicate activity protected by the Second Amendment."); and *Williams v. State*, 10 A.3d 1167, 1178 (Md. 2011) (holding that regulations on carrying firearms outside the home are "outside of the scope of the Second Amendment, as articulated in *Heller* and *McDonald*").

Considering this spectrum of decisions, this is certainly not a case where it is obvious that there was a violation of clearly established law.  Indeed, the opposite is quite apparent.  Facing no settled legal principle regarding an individual's right to openly carry a firearm in public, the Court concludes that Plaintiff has not sufficiently shown that Defendants violated clearly established law.  Defendants are therefore entitled to qualified immunity.  Plaintiff's Second Amendment Claim must therefore be dismissed.

### 2.  First Amendment Claim

Plaintiff alleges that Defendants Johnson and Fieger violated his First Amendment rights when they refused to allow him to film his own detention, search, and seizure.  Plaintiff specifically states that he "requested to videotape [Defendant] Johnson's and [Defendant] Fieger's search, detention, and seizure of his property with his smartphone" and that the Defendants "denied [his] request to videotape the encounter."  (Doc. # 1 at 6.)  Plaintiff adds that he made the request when Defendants "were detaining [him] with their guns drawn."  (*Id.*)  In essence, Plaintiff's contention depends on a finding that he has an unfettered First Amendment right to film the police while they are in the midst of effecting his detention, seizure, and arrest.

As with Plaintiff's Second Amendment claim, Plaintiff has insufficiently

demonstrated that the right he asserts is well-established.  Indeed, whether, as Plaintiff

contends, the First Amendment provides a private citizen with an absolute right to film

his own investigatory stop, search, and seizure remains unsettled.  Indeed, Plaintiff has

not cited one Supreme Court or Tenth Circuit case deciding, much less addressing, the

issue.  Nor has Plaintiff demonstrated that "the clearly established weight of authority

from other courts . . . have found the law to be as the plaintiff maintains."  *Walker*, 451

F.3d at 1151.

Some circuits and district courts have recognized that the First Amendment

protects the filming of government officials in public spaces on matters of public interest.

*See, e.g., Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) ("[T]hough not unqualified, a

citizen's right to film government officials, including law enforcement officers, in the

discharge of their duties in a public space is a basic, vital, and well-established liberty

safeguarded by the First Amendment."); *Fordyce v. City of Seattle*, 55 F.3d 436, 439

(9th Cir.1995) (recognizing a "First Amendment right to film matters of public interest");

*Schnell v. City of Chi.*, 407 F.2d 1084, 1085 (7th Cir. 1969) (reversing dismissal for

failure to state a claim of suit claiming police interference with news reporters and

photographers' "constitutional right to gather and report news, and to photograph news

events" under the First Amendment); *Smith v. City of Cumming*, 212 F.3d 1332, 1333

(11th Cir. 2000) ("The First Amendment protects the right to gather information about

what public officials do on public property, and specifically, a right to record matters of

public interest.").  But the Tenth Circuit has not so concluded, and there remains a

circuit split on the issue.  Indeed, in *Mocek v. City of Albuquerque*, 813 F.3d 912, 931 (10th Cir. 2015), the Tenth Circuit expressly declined to resolve whether "there is First Amendment protection for creating audio and visual recordings of law enforcement officers in public places," and highlighted a split of authority on the matter.

In addition, none of the cases above, or those cited by Plaintiff in his Complaint, addresses the issue presented here—an arrestee's, or in this case a detainee's, right to film his own detention and search while it is occurring.  *C.f. Glik*, 655 F.3d at 79 (plaintiff arrested for using his cell phone to film several police officers arresting *another man*); *Fordyce*, 55 F.3d at 436 (plaintiff arrested for videotaping a public protest); *Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (discussing, generally, how "the act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights").

Even considering the cases that acknowledge a citizen's right to film law enforcement in public, virtually none support an *unfettered* right to do so.  *See Gericke v. Begin*, 753 F.3d 1, 7–8 (1st Cir. 2014) (holding the right to film an officer at a traffic stop was not unlimited); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010) (holding there was no clearly established "right to videotape police officers during a traffic stop"); *McCormick v. City of Lawrence*, 130 Fed.Appx. 987, 988–89 (10th Cir. 2005) (holding it was not clearly established that police violated the First Amendment by destroying recordings of police activity at roadside sobriety checkpoints); *Szymecki v. Houck*, 353 Fed.Appx. 852, 853 (4th Cir. 2009) (holding the right to record police activity on public property was not clearly established).  Most courts have qualified a citizen's

right to film with time, place, and manner restrictions, including, for example, "the circumstances of some traffic stops," *Gericke*, 753 F.3d at 7–8, or to prevent "disruptive behavior," *Olasz v. Welsh*, 301 Fed. Appx. 142, 146 (3d Cir. 2008).  How those restrictions would apply to this case is unclear, and certainly could not have provided these Defendants with fair and clear warning about whether to allow Plaintiff to film them during a crucial portion of his detention.

Without clear legal authority addressing the filming issue facing Defendants Johnson and Feiger, this Court cannot confidently conclude that the state of the law governing First Amendment filming rights at the time of the alleged violation gave them fair warning that their particular conduct was unconstitutional.  In other words, Plaintiff's absolute right to film under these circumstances was not so clearly established as to overcome Defendants' assertions of qualified immunity.  Plaintiff's First Amendment Claim must therefore be dismissed.

### 3.  Fourth Amendment Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see Mayfield v. Bethards*, 826 F.3d 1252, 1255–56 (10th Cir. 2016).  To state a claim under the Fourth Amendment, plaintiffs must show both that a "seizure" occurred and that the seizure was "unreasonable."  *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000).  An investigative detention, or a Terry stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause.  *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th

Cir. 2000).  "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id.*  Based on the totality of the circumstances, the detaining officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).  Moreover, the constitutionality of an investigative detention depends on "whether the officer's action was justified at its inception," *Terry v. Ohio*, 392 U.S. 7, 19–21 (1968), and whether the detention lasted "longer than necessary to effectuate the purpose of either dispelling or confirming the officer's reasonable suspicion," *U.S. v. White*, 584 F.3d 935, 953 (10th Cir. 2009) (internal quotations omitted).

### a. Defendants Johnson and Fieger

Plaintiff contends that Defendants Johnson and Fieger violated his Fourth Amendment rights when they detained him without "probable cause or reasonable suspicion, or any other legally valid basis, to believe that [Plaintiff] ha[d] committed or was committing any violation of the law."  (Doc. # 9.)  To the extent that Plaintiff's Fourth Amendment Claim is premised on his assertion that he has a vested Second Amendment right to openly carry a firearm in public, this Court has already concluded that alleged right is not clearly established; thus, nor is the law governing whether law enforcement may, under the Fourth Amendment, stop, question, and search an individual for the same conduct.

Moreover, as Plaintiff acknowledges, Defendants Johnson and Fieger were responding to a 911 caller's allegations that Plaintiff was engaged in violent activity. This call, coupled with Plaintiff's visible weapon, gave Defendants reasonable suspicion of criminal activity sufficient to investigate under the Fourth Amendment.  In other words, Plaintiff has failed to plead that his initial detention fell outside the confines of the Fourth Amendment.  That Plaintiff's conduct may have been lawful does not persuade the Court otherwise; even wholly lawful conduct can create a suspicion of criminal activity.

Plaintiff also alleges that Defendants' seizure of his weapon was unconstitutional. But, during an investigative detention, police officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo. *United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006); *see Adams v. Williams*, 407 U.S. 143, 146 (1972) ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, he may conduct a limited protective search for concealed weapons.") (quotations omitted).  According to Plaintiff, Defendants Fieger and Johnson immediately seized his visible weapon.  Based on their suspicion of violent criminal activity, the act of relieving the suspect of a weapon as a precautionary measure in the preliminary stage of an investigation was not unreasonable.

Plaintiff also maintains that his four-hour detention lasted "longer than necessary to effectuate the purpose of either dispelling or confirming the officer's reasonable suspicion." *White*, 584 F.3d at 953.  However, Plaintiff fails to adequately plead when,

during that timeframe, Defendants Johnson's and Feiger's reasonable suspicion was dispelled.  Plaintiff alleges that, after detaining him and seizing his weapon, Defendant Johnson contacted the 911 caller who maintained that his suspicions were based on Plaintiff's visible weapon.  According to Plaintiff, the caller "did not relay any information . . . that would [create a] belief that [Plaintiff] had violated any law or threatened the safety of any person."  (Doc. # 1 at 6.)  Plaintiff does not, however, specify when this phone call occurred or how soon afterward Plaintiff was released, other than to state that Defendants "continued to detain [him]."  (*Id.*)

Plaintiff also alleges that Defendants' suspicions should have been dispelled when the manager of Epic Autos told them Plaintiff was calm and compliant while on the premises.  However, Defendants' suspicions were based on Plaintiff's alleged conduct *outside* the repair shop; thus statements about his character inside the shop are insufficient to demonstrate that Defendants' suspicions should have been dispelled. Indeed, the manager of Epic Autos also told them that Plaintiff "had been coming and going from the shop."  (*Id.*)

Thus, under the totality of the circumstances, the Court concludes that Plaintiff has insufficiently pled a Fourth Amendment violation with regard to Defendants Fieger and Johnson.  *See Terry,* 392 U.S. at 22–23 (even ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity depending on the totality of the circumstances); *see also Illinois v. Wardlow,* 528 U.S. 119 (2000).  Despite the Magistrate Judge's recommendation otherwise, the Court dismisses the Fourth Amendment claim against them under Rule 12(b)(6).

### b. Defendants Seigal, Contos, Comer, Schneider, and Englewood

Much of Plaintiff's Fourth Amendment allegations against Defendants Seigal, Contos, Comer, Schneider, and Englewood are premised on a finding that Defendants Johnson and Feiger acted unconstitutionally.  The Court has already concluded, however, that Plaintiff's allegations are insufficient to support that finding.  Even so, the Court addresses Plaintiff's contentions against these Defendants, ultimately concluding that Plaintiff has insufficiently plead their personal participation in the incident.

Personal involvement or participation is an essential element of a 41 U.S.C. § 1983 claim against a public official.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  Simply reciting the elements of a claim is insufficient to support personal participation or overcome a motion to dismiss under Rule 12(b)(6).  Moreover, "a supervisor is not liable under § 1983 for the actions of a subordinate unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)*; Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993)).

### i.  Defendants Seigal and Contos

With regard to Defendants Seigal and Contos, Plaintiff's allegations are insufficient.  Neither Defendant is alleged to have participated in the initial detention or search of Plaintiff.  Nor does Plaintiff assert that they took part in the seizure of Plaintiff's gun or in the decision to charge Plaintiff with disorderly conduct.  Indeed, Plaintiff's complaint states just the opposite—that these Defendants arrived on the

scene *after* Plaintiff had been detained and searched, and his property seized.  (Doc. # 1 at 6.)  Plaintiff nonetheless alleges that Defendants Seigal's and Contos's personal participation in allowing Plaintiff's detention to continue once they arrived violated the Fourth Amendment.  However, Plaintiff's only references to Defendant Seigel are that he "continued to detain" Plaintiff and that "the officers" told Plaintiff that he was "being detained until they could figure out what crime he had committed."  Neither of these general allegations is sufficient to support that Defendant Seigel personally participated in violating Plaintiff's constitutional rights.[1]

With regard to Defendant Contos, Plaintiff asserts that he should have directed the release Plaintiff when he independently acquired knowledge that dispelled reasonable suspicion.  *See White*, 584 F.3d 953 (Fourth Amendment allows investigative detentions to continue as long as necessary to dispel or confirm reasonable suspicion).  Plaintiff specifically points to the following facts as dispelling reasonable suspicion: (1) Plaintiff had been calm and compliant while in the car shop, and (2) his gun was not stolen.  Plaintiff's allegations are insufficient to support a finding that Defendant Contos had sufficient information to "dispel or confirm reasonable suspicion."  *See id.*  As mentioned, much of the reasonable suspicion forming the basis for the investigation arose from a 911 caller who observed Plaintiff outside the car shop

---

[1] Moreover, clearly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action in circumstances like this from assuming that proper procedures have already been followed.  No settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers in instances like this one.  *See White v. Pauly*, 137 S. Ct. 548, 552 (2017).

and with whom Defendant Contos did not converse.  Moreover, whether the gun was stolen says nothing about Plaintiff's use of it.

The Court also notes that Plaintiff does not allege that Defendants Seigel and Contos took any part in determining the length of Plaintiff's detention.  In fact, it is entirely unclear from the Complaint how long Defendants Seigal and Contos remained onsite.  Taken as true, Plaintiff has not pled sufficient facts to support finding that Defendants Contos or Seigal violated his Fourth Amendment rights.  The Court therefore dismisses Plaintiff's Fourth Amendment claim against them.

> ### ii.  *Defendants Comer and Schnieder*

Plaintiff's Fourth Amendment claims against Defendants Comer and Schnieder are based on only minimal participation – namely, in response to inquiry from Defendant Johnson, Defendants Comer and Schneider are alleged to have responded that a disorderly conduct charge could be applicable to Plaintiff's conduct.  Plaintiff contends that this response improperly ratified the detention, search, and seizure.  Nowhere in the Complaint, however, does Plaintiff assert or demonstrate that Defendants Comer and Schneider *directed* Defendants Johnson and Feiger to initiate such a charge.  Nor does Plaintiff contend that Defendants Comer or Schneider took part in Plaintiff's initial detention or search or that they directed Officers Johnson or Fiegal to seize Plaintiff's firearm.  To the extent Plaintiff alleges that Defendants Comer and Schneider maintained supervisory authority over Defendants Johnson and Feiger and should be liable for their actions as a result, that allegation is unsupported by clear legal

precedent—namely, "there is no concept of strict supervisor liability under § 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

Thus, Plaintiff has not pled sufficient facts to support finding that Defendants Comer or Schneider violated his Fourth Amendment rights and this claim against them is dismissed.

### iii. *Defendant Englewood*

Finally, Plaintiff's conclusory statement that Defendant Englewood maintains a "custom, policy and/or practice of detaining and searching individuals for exercising their right to openly carry firearms under the guise of the crime of disorderly conduct and seizing their firearms" merely states the legal elements of his claim which is insufficient to successfully plead a violation under the Fourth Amendment and overcome a motion to dismiss under Rule 12(b)(6).

The Court therefore dismisses Plaintiff's Fourth Amendment claim against Defendant Englewood.

### 4. Conspiracy Claim

"[A] conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law" pursuant to § 1983 is actionable. *See Snell*, 920 F.2d at 701. In order to prevail on such a claim, the plaintiff "must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Id.*

"A conspiracy requires the combination of two or more persons acting in concert." *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir.2004) (internal quotation marks,

alterations, and citations *1130 omitted).  "In order to plead a conspiracy claim, a plaintiff must allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants."  *Id.* (internal quotation marks, alterations, and citations omitted).  The plaintiff must show that there was "a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences."  *Snell*, 920 F.2d at 702 (citations omitted).  "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice."  *Twombly*, 550 U.S. at 556.  "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Id.* at 556–57; *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir.1994) ( "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.") (citations omitted).

In this case, Plaintiff briefly alleges that "Defendants conspired for the purposes of retaliating against Plaintiff for exercising his rights . . ." and "in furtherance of this conspiracy, Defendants Johnson, Fieger, Contos, and Siegal unlawfully detained Plaintiff, Defendant Johnson initiated charges against him, and Defendant Fieger seized his property."  (Doc. # 1 at 11.)

Without more, these allegations are insufficient to state a plausible claim. Plaintiff does not allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among Defendants.  His statements that they "conspired" and then acted "in furtherance of this conspiracy" are conclusory at best.  If anything, Plaintiff

merely shows parallel conduct, which, coupled with nothing more than the bare assertion that the Defendants "conspired," is sufficient to support a conspiracy claim. *See Shimomura case* (complaint alleging that Defendants "acted in concert" and pointing to their similar affidavits was insufficient to support a claim for conspiracy); *see also Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 322 (2d Cir. 2010) ("[A]llegations of parallel conduct 'must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'").

Accordingly, Plaintiff's Third Claim for Relief—Conspiracy—is dismissed.

### 5. Municipal Liability

To establish a municipality's liability under § 1983, a plaintiff must first show that a municipal employee exceeded constitutional limitations. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 386–87 (1989); *Hinton v. City of Elmwood*, 997 F.2d 774, 782 (10th Cir. 1993). Because the Court has concluded that Plaintiff has not made such a showing here, Plaintiff's claim of municipal liability also cannot succeed.

Moreover, even assuming the existence of an employee's constitutional violation, Plaintiff's allegations are insufficient. Plaintiff seeks to impose municipal liability based on a single incident, under which he must show "the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Jenkins*, 81 F.3d at 994; *Butler*, 992 F.2d at 1005 (municipal liability based on a single incident is generally insufficient to support a municipal liability claim). Plaintiff fails to make this showing. In his Complaint, Plaintiff alleges that Defendants Schneider and Comer "were the employees with the final

policymaking and supervisory authority . . . over subordinate law enforcement officers, Defendants Johnson, Fieger, and Siegal." (Doc. # 1 at 13.)  But there is no indication that a City Attorney (Defendant Comer) acts with supervisory authority over law enforcement officers for municipal liability purposes.  Even if the Court assumes this relationship to be true, Plaintiff's own recitation of the facts demonstrates that neither Defendant Comer nor Defendant Schnieder made or initiated the decision to pursue "the particular illegal course of action." *See Jenkins*, 81 F.3d at 994.  Indeed, these Defendants were not even contacted until after Plaintiff had been detained and searched.  And once contacted, neither Defendant Comer nor Defendant Schnieder "instructed" Defendants Johnson and Siegal to charge Plaintiff; instead, as Plaintiff's Complaint states, they responded that a disorderly conduct charge could be "applicable" to the situation.  As the Magistrate Judge correctly opined, such an allegation is insufficient to support a claim for municipal liability in this context. *See Twitchell v. Hutton*, No. 10-CV-01939-WYD-KMT, 2011 WL 318827, at *5 (D. Colo. Jan. 28, 2011) ("Plaintiff's Complaint fails to allege any facts regarding an affirmative approval of [defendant's] actions, which is required in order to establish municipal liability under § 1983 under a ratification theory.").

Finally, as mentioned, Plaintiff's allegation that Defendant Englewood's "policies, customs, or practices in failing to properly train and supervise its employees were the moving force and proximate cause of the violation to [Plaintiff]," is nothing more than a formulaic recitation of the elements of municipal liability.  Such a conclusory statement is insufficient to overcome a Rule 12(b)(6) motion to dismiss.

The Court accordingly dismisses Plaintiff's municipal liability claim.

**B. Colorado Constitutional Claim**

Article II, Section 13 of the Colorado Constitution provides,

> The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.

However, no statutory equivalent to § 1983 exists under Colorado state law to enforce the state constitution. *Vanderhurst v. Colo. Mountain Coll. Dist.*, 16 F. Supp. 2d 1297, 1304 (D. Colo. 1998). Indeed, Colorado appellate courts have not recognized an implied cause of action to enforce Colorado constitutional provisions, unless there is no other adequate remedy available. *Id.* In *Board of Cnty Com'rs of Douglas Cnty v. Sundheim*, the Colorado Supreme Court expressly stated, "[w]hile it may be appropriate to recognize an implied state constitutional cause of action when there is no other adequate remedy, . . . where other adequate remedies exist, no implied remedy is necessary." 926 P.2d 545, 553 (Colo. 1996).

Here, Plaintiff has adequate remedies available pursuant to § 1983 for the violations he alleges. This Court declines to recognize an additional state constitutional cause of action when Colorado's highest court denied its availability. The fact that Plaintiff ultimately has not prevailed on his § 1983 claims does not make it any less "available" as a legal remedy. *See Arndt v. Koby*, 309 F.3d 1247, 1255 (10th Cir. 2002).

Plaintiff nonetheless cites to three Colorado state cases in support of his contention that he has a right to bring this cause of action under the Colorado

Constitution.  None of those cases, however, are applicable here because each involves a challenge to the constitutionality of a city ordinance or a university policy. *Robertson v. City & Cty. of Denver*, 874 P.2d 325, 326 (Colo. 1994) (challenging the constitutionality of Denver City Council Ordinance No. 669); *City of Lakewood v. Pillow*, 501 P.2d 744, 745 (1972) (challenging Lakewood ordinance numbered 0–70–47, Sec. 3–9); *Students for Concealed Carry on Campus, LLC v. Regents of Univ. of Colorado*, 280 P.3d 18, 21 (Colo. App. 2010) (challenging state university's Weapons Control Policy 14–I).  Plaintiff is not challenging the constitutionality of Article II, Section 13 of the Colorado Constitution in this case.

Accordingly, the Court dismisses Plaintiff's claim brought under the Colorado Constitution.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the Court ORDERS as follows:

1. The Report and Recommendation of Magistrate Judge Tafoya (Doc. # 35) is ADOPTED IN PART and REJECTED IN PART.

2. Defendants' Motion to Dismiss (Doc. # 18) is GRANTED.

3. Plaintiff's Complaint is DISMISSED WITH PREJUDICE under Fed. R. Civ. P. 12(b)(6).

DATED:  March 27, 2017                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge